**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **WESLEY SPRATT, PRO SE** | : | |
| **V.** | : | **C.A. No. 04-112 S** |
| **DEPARTMENT OF CORRECTIONS** **ASHBEL T. WALL II, ET AL.** | : | |
| | : | |

**SUPPLEMENTED MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT**

Now comes the Plaintiff, Wesley Spratt, Pro Se, pursuant to the order of the Court dated, August 29, 2005, and hereby supplements his memorandum in support of his motion for summary judgement and requests the Honorable Federal District Court of Rhode Island to grant plaintiff summary judgement for the following reasons:

1. The plaintiff filed suit against the defendant under 42 § 2000 bb 1(c) (R.F.R.A.) Religious Freedom Restoration Act. See [1] under jurisdiction in the complaint. The complaint was specifically filed under that Statute **and not under § 1983** because § 1983 has various immunity clauses that would protect the defendant and those who subjected the plaintiff to the Constitutional violations of his 1st and 14th Amendments from liability.

2. The R.F.R.A., changed the old governing standard of reasonableness; **Tuner v. Safley, 482 U.S. 96 L.Ed. 2d 64, 107 S.Ct. 2554. Into the new and only applicable governing standard now the least restrictive means.**

3. The Supreme Court then found that the R.F.R.A. was unconstitutional insofar as it applied to States and localities because

the Statute exceeded congress's power under the 14th Amendment. **City of Boern v. Flores, 521 U.S. 507, 138 L.Ed. 2d 624, 117 S. Ct. 2157 (1997).** However, **congress still determined to protect the religious rights of all citizens in the least restrictive means. including those incarcerated reacted to Boern by passing the R.L. U.I.P.A. Religious Land Use and Institutionalized persons Act.** Which has the same **governing standard** as the R.F.R.A. The complaint was amended to that Statute; 42, 2000 c.c. Which is even broader in its range of protection.

4. The Act provides in the relevant part, that no governments, or **Department**, or official, or other person, shall impose a substantial burden on the **religious exercise** of a person **residing in or confined to an institution** unless the burden is in the furtherance of a compelling governmental interest and is in the **least restrictiv means** of furthering that interest. The defendant clearly **does not meet that standard.**

5. The Act defines **"religious exercise" as any exercise** of **religion,** whether or not compelled by, or central to a system of religious belief; **42 U.S.C. § 2000 cc-5 (7) (A).** The **Acts requirement of strict scrutiny stands in sharp contrast** to the Supreme Courts' pevious decisions, which have held that the Courts should apply a rational relationship review to restriction upon inmates fundamental rights. **See Turner v. Safley and Olone v. Shabazz,** for the old governing standard of reasonableness which is **no longer applicable case law.**

6. Congress knowing that institutions have always hidden behind prison security as a means to get by with violating prisoners constitutional rights. Used specific language under the R.F.R.A.,

so what ever Court the Statute was brought before would prevent that very thing from taking place. The Plaintiff even quoted it in his complaint. **See [49] under claim which quotes in part;** " The house commitee report states that under the R.F.R.A., **seemingly reasonable regulations** based upon **speculation, exaggerated fears,** or past hoc rationlizations **will not suffice to meet the Act's requirements"** reprented in 1993 U.S.C.A.N. at 1900. A Federal Statute ceating a private cause of action permits the recovery of damages, sence governmental units are not entitled to the **defense of qualified immunity, nor any official, or other person** acting under the color of law, of the United States, A State, or subdivision of a State. That being true everyone named in the complaint is liable.

7. Nothing in the Statute authorizes officials to **impose a burden** on one kind of religious practice on the ground that other practices are permited and the **religious Land Use and Institutionalized persons Act, is even broader in its range of protection.**

8. Plaintiff's complaint was sent with an exhibit that has three (3) separate letters from the outside cleargy. These men and women of God shall all come to Court and testify that plaintiff never led and/or tried to **lead his own religious service.** They will all testify to the truth, that they lead the service and shared their time with the plaintiff. The plaintiff preached the word of God under their direct supervision for 7 years without one insident or problem of any kind.

9. The senior Magistrait, Jacob Hagopian, was decieved by the defendants counsel who diliberately kept citing § 1983 cases which are not applicable, attempting to squirm his client out of liability. Knowing that § 1983 has immunityclauses, but there is **no immunity** under the Religious Freedom Statutes. The defendants counsels deception was so successful that the magistrait wrongfully granted a summary judgement against the plaintiff on a § 1983 that plaintiff never even filed.

10. The defendant cited a long list of cases that were all governed under the old **standard of reasonableness** which is no longer appliclable. Starting with, **Benjamin v. Coughlin**, **Cooper v. Tard**, **Johnson Bey v. Lane**, **Hadi v. Horn**, **Anderson v. Angelone**. The plaintiff gave a consise review of each case in his amended answer and objection to the defendants cross motion for summary judgement. Which clearly exposed that all of the cases ruled more in the plaintiff's favor and he should be granted a summary judgement as a matter of law.

11. To prove that fact the plaintiff has sent the Court the same two (2) exhibits that were already sent to the first circuit. The first case the defendant cited was, **Benjamin v. Coughlin**. **See Exhibit 1.** " Muslim and Buddist **inmates are permited to use inmate religious leaders** under the supervision of an outside sponser who **is not present ast the meeting.** Plaintiffs have not been **permited** to use inmates leaders because **no outside sponsor has come forward.** Another case the defendant cited was **Anderson v. Angelone. See Exhibit 2.** " The rule does not forclose **Anderson** from practicing his religion, **infact, he is welcome to assist the prison chaplin in leading religious activities.**

12. Both of the **cases** that the defendant cited against the plaintiff clearly show that **inmates did have a right to lead religious servises** when the outside cleargy were present. **Benjamin v. Couglin,** even showed that the inmates had a right to lead their own service when the cleargy was not present as long as they had one incase a doctrined dispute arose. Yet that is the very case the magistrait cited against the defendant and wrongfully garnted a summary judgement aginst the plaintiff on a § 1983 claim that plaintiff never even filed. Plaintiff's amended answer and objection explained everything, but his documents were clearly not even being read. The Plaintiff has suffered extream prejudice.

Finally, the U.S. Supreme Court has found that, **Cutter v. Wilkinson, did not violate the first Amendment**. **Cutter v. Wilkinson,** was filed by serveral inmates from non-mainstream religions, the Satanist, Wicca and Asatru, to name a few of them. The Ohio State Institutions said that RLUIPA allowed inmates gangs to claim religios status in order to insulate their illicit activities from scrutiny. The U.S. Supreme Court found that the R.L.U.I.P.A. did not violate the first Amendment.

**CONCLUSION**

Now clearly the State of Rhode Island, the great State of Rogers Williams, the Baptist Preacher. One of the first States in history to protect the religios rights of its people can see that the Plaintiff's case is entirely different. There was no reason at all to grant any stay. In any case the ony **applicable** governing standard by law is the **least restrictive means.** The defendants are violating plaintiff's Constitutional rights even under the old governing standard of reasonableness.

So **it is impossible not to see** plaintiff's rights are being violated under the **least restrictive means.**

WHEREFORE, Plaintiff humbly and respectfully requests the Honorable Federal District Court of Rhode Island to grant plaintiff a summary judgement against the defendant(s) as a matter of law. (The defendants request is **disengenious without merit and simply unbelievable)** And any other relief deemed just and proper.

May God Bless Your Judgement,

Respectfully Submitted,

Wesley Spratt

Wesley Spratt Pro Se
P.O. Box 8273
Cranston, R.I. 02920

**CERTIFICATION**

I, Wesley Spratt, hereby swear and certify that I mailed a true and correct copy of the supplemented memorandum in support of plaintiff's motion for summary judgement to the defendants counsel at 40 Howard Avenue on the 9th September, 2005.

Wesley Spratt

Wesley Spratt Pro Se
P.O. Box 8273
Cranston, R.I. 02920

cc:File

EXHIBIT 1

BENJAMIN VS COUGHLIN

Dennis J. Saffran, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of State of N.Y., New York City, of counsel), for defendants-appellees, cross-appellants.

Before VAN GRAAFEILAND, PIERCE and MINER, Circuit Judges.

MINER, Circuit Judge:

Plaintiffs, Rastafarian inmates in the custody of the New York State Department of Correctional Services ("DOCS"), appeal from a judgment entered in the United States District Court for the Southern District of New York (Stanton, *J.*) rejecting claims, brought pursuant to 42 U.S.C. § 1983 (1982), that various regulations and policies of DOCS violate their first amendment right to free exercise of their religion and their fourteenth amendment right to equal protection of the laws. *Benjamin v. Coughlin*, 708 F.Supp. 570 (S.D.N.Y.1989). Specifically, the district court rejected plaintiffs' contentions that they were entitled to weekly congregate prayer, unrestricted wearing of religious headgear and a diet consistent with their religious beliefs.

Defendants, the Commissioner of DOCS and three correctional facility superintendents, appeal from so much of the judgment as enjoins the enforcement of a regulation requiring members of the plaintiff class to submit to a haircut upon admission to a facility under defendants' jurisdiction. The district court found that defendants were precluded from enforcing the regulation under the doctrine of collateral estoppel, and that the regulation violates the free exercise clause of the first amendment. Defendants contend that the regulation is reasonably related to valid penological interests and that litigation of the issue was improperly precluded by the district court.

For the following reasons, we affirm.

BACKGROUND

The Rastafarian religion [1] was founded in Jamaica. Adherents believe that the coronation of Haile Selassie, the deceased emperor of Ethiopia, constituted the fulfillment of a prophesy. Aside from the belief in the divinity of Haile Selassie, the religion is marked by a decentralized structure and the absence of a conventional religious hierarchy. The closest example of an authoritative figure is an "Elder," one who has studied the tenets of the religion.

A fundamental tenet of the religion is that a Rastafarian's hair is not to be combed or cut, resulting in rope-like strands known as "dreadlocks." Directive 4914 of the DOCS, however, requires all newly admitted males to submit to a haircut and photograph upon arrival at a DOCS facility. Male inmates are then permitted to regrow their hair to any length and are subject to rephotographing if their appearance changes drastically.

Plaintiffs also believe that, whenever they are in public places, their dreadlocks must be covered by loose-fitting knit headgear known as "crowns." Under current policy, crowns may be worn only in designated areas of DOCS facilities. Jewish and Muslim inmates, however, are permitted to wear their respective religious headgear throughout the prison facilities, subject to frisk searches.

Rastafarians engage in congregate religious observance—"Issembly"—which consists of chanting, beating of drums, readings, and religious conversation called "reasoning." [2] Plaintiffs have been denied the right to congregate for weekly religious observance. This restriction is based on defendants' interpretation of New York Correction Law § 610 (McKinney 1987) as prohibiting religious congregation unless an outside spiritual sponsor is available to supervise the service. Although Muslim and Buddhist inmates are permitted to use inmate religious leaders, under the supervi-

1. Defendants do not raise the issue whether Rastafarianism is a religion protected by the first amendment. That issue has been resolved against them in state court. *Overton v. Coughlin*, 133 A.D.2d 744, 745–46, 520 N.Y.S.2d 32, 34 (2d Dep't 1987).

2. The Rastafarian service is also said to involve the smoking of marijuana. Plaintiffs, however, do not assert that they should be permitted to smoke marijuana during their services.

**sion of an outside sponsor who is not present at the meeting, plaintiffs have not been permitted to use inmate leaders because no outside sponsor has come forward.**

Many Rastafarians observe a strict vegetarian diet called "Ital," which includes prohibitions on the consumption of meat and caffeine and restricts the diet to natural foodstuffs. Dietary habits vary among Rastafarians, but consumption of pork seems to be prohibited generally. Under DOCS policy, alternative portions are offered to all inmates whenever pork is served, and special kosher meals are provided for inmates at some facilities. Muslim and Buddhist inmates are provided special meals during certain holidays.

In August 1986, the district court granted a preliminary injunction enjoining the enforcement of the initial haircut requirement as it applied to the plaintiffs. *Benjamin v. Coughlin,* 643 F.Supp. 351 (S.D.N.Y.1986). The court based this injunction on the preclusive effect of New York state court decisions in *Lewis v. Commissioner of the Dep't of Correctional Servs.,* No. 85–11167, slip op. (Sup.Ct. Aug. 1, 1985), *aff'd sub nom. People v. Lewis,* 115 A.D.2d 597, 496 N.Y.S.2d 258 (2d Dep't 1985), *aff'd,* 68 N.Y.2d 923, 502 N.E.2d 988, 510 N.Y.S.2d 73 (1986) (mem.), and *Overton v. Department of Correctional Servs.,* 131 Misc.2d 295, 499 N.Y.S.2d 860 (Sup.Ct. 1986), *aff'd,* 133 A.D.2d 744, 520 N.Y.S.2d 32 (2d Dep't 1987) (mem.), *appeal dismissed,* 72 N.Y.2d 838, 526 N.E.2d 42, 530 N.Y.S.2d 551 (1988). *Benjamin v. Coughlin,* 643 F.Supp. at 357.

Defendants moved to vacate the injunction in June of 1987 on the ground that the Supreme Court's decisions in *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), altered the standard of review for prisoners' rights claims. The district court reserved decision and heard testimony without a jury on all of plaintiffs' claims. In its post-trial decision in 1989, the district court reaffirmed the application of nonmutual offensive collateral estoppel but also found that Directive 4914 did not pass constitutional muster under *Turner* and *Shabazz. Benjamin,* 708 F.Supp. at 573. The court enjoined enforcement of the haircut regulation as it applied to the plaintiff class but rejected plaintiffs' challenges to the denial of the right to congregate, to wear crowns, and to be provided with a special diet. *Id.* at 573–76.

## DISCUSSION

### I. Standards to be Applied

Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, are the interests of prison officials charged with complex duties arising from administration of the penal system. *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). Recognizing that federal courts are ill-equipped to deal with the complexities of prison administration, the Supreme Court has accorded great deference to determinations of prison officials and fashioned "a lesser standard of scrutiny ... in determining the constitutionality of the prison rules." *Turner,* 482 U.S. at 81, 107 S.Ct. at 2257; *see also Shabazz,* 482 U.S. at 349, 107 S.Ct. at 2404.

[1] The governing standard is one of reasonableness, taking into account whether the particular regulation affecting some constitutional right asserted by a prisoner is "reasonably related to legitimate penological interests." *Turner,* 482 U.S. at 89, 107 S.Ct. at 2261; *Shabazz,* 482 U.S. at 349, 107 S.Ct. at 2404. The *Turner* Court determined that the factors to be considered are: 1) whether there is a rational relationship between the regulation and the legitimate government interests asserted; 2) whether the inmates have alternative means to exercise the right; 3) the impact that accommodation of the right will have on the prison system; and 4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest. *Turner,* 482 U.S. at 89–90, 107 S.Ct. at 2261–62; *Fromer v. Scully,* 874 F.2d 69, 72 (2d Cir.1989).

**EXHIBIT,2**

**ANDERSON VS ANGELONE**

*nett v. Spear*, — U.S. —, —, 117 S.Ct. 1154, 1168, 137 L.Ed.2d 281 (1997) (citations omitted). Here, the Service has not concluded its EA with respect to the Gray Butte access road. Until the Service actually makes a final decision regarding the road, a challenge to the access road under NEPA is not ripe for review.

## CONCLUSION

The district court properly concluded that a direct challenge to the Service's decision to approve a new access road is not ripe for review. It also properly dismissed Appellants' claims on res judicata grounds, save for the *Ashbacker* and access road claims. Because the record is sufficiently developed for us to determine that these claims should be resolved in Appellees' favor, we affirm the district court's decision. We also hold that Oberdorfer's individual claim is barred by res judicata.

Appellees are awarded costs. No parties shall receive attorney's fees on appeal.

AFFIRMED.

**Charles Oren ANDERSON, Plaintiff–Appellant,**

v.

**Ron ANGELONE; Frankie Sue Del Papa; Bob Miller; Does 1–100, Defendants–Appellees.**

**No. 97–15304.**

United States Court of Appeals, Ninth Circuit.

Submitted* Aug. 1, 1997.

Decided Aug. 13, 1997.

Inmate brought civil rights action to challenge prison regulations governing religious activities. The United States District Court for the District of Nevada, Philip M. Pro, J., dismissed action for failure to state a claim, and inmate appealed. The Court of Appeals, 86 F.3d 932, reversed and remanded. On remand, the District Court, Pro, J., entered summary judgment in favor of prison officials, and inmate appealed. The Court of Appeals, Hall, Circuit Judge, held that Nevada prison regulations prohibiting inmate from acting as minister of his own church at prison did not violate inmate's First Amendment right to free exercise of religion.

Appeal dismissed.

**1. Constitutional Law ⚷84.5(14)**

**Prisons ⚷4(14)**

Nevada prison regulations prohibiting inmate from acting as minister of his own church at prison did not violate inmate's First Amendment right to free exercise of religion; requiring outside minister to lead religious activity among inmates contributed to prison security and helped ensure that inmate activity was supervised by responsible individuals. U.S.C.A. Const.Amend. 1.

**2. Federal Courts ⚷728**

Inmate's appeal from summary judgment entered in civil rights action was required to be dismissed under Prison Litigation Reform Act (PLRA), where inmate was proceeding in forma pauperis and failed to state a claim for relief. 28 U.S.C.A. § 1915(e)(2)(B)(ii).

---

Charles Oren Anderson, Pro per, Jean, NV, for plaintiff–appellant.

Susan B. Weingarten, Deputy Attorney General, Las Vegas, NV, for defendants–appellees.

Appeal from the United States District Court for the District of Nevada; Philip M. Pro, District Judge, Presiding. D.C. No. CV–93–00933–PMP(RLH).

Before: HALL and BRUNETTI, Circuit Judges, and WEINER, District Judge.**

* This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir. R. 34–4.

** Hon. Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Charles Anderson, a Nevada state prisoner, appeals the district court's grant of summary judgment for defendants in his 42 U.S.C. § 1983 challenge to prison rules preventing him from acting as the minister of his own church at the prison. Because Anderson is proceeding in forma pauperis and his case fails to state a claim on which relief can be granted, we dismiss the appeal pursuant to the Prison Litigation Reform Act of 1996, 28 U.S.C. § 1915(e)(2) (see Part II infra).

The facts are adequately set out in our prior opinion in this case, *see Anderson v. Angelone*, 86 F.3d 932, 933–34 (1996), and we do not dwell on them here. To summarize, the Nevada Department of Prisons has a policy prohibiting inmates from leading religious groups. Anderson, a minister of the Universal Life Church, sued under § 1983 to challenge these regulations. The district court granted summary judgment in favor of defendants. On appeal, we reversed because the district court had in effect converted the government's motion to dismiss into a motion for summary judgment without informing Anderson of his rights to file additional materials, as required by *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir.1988). *See Anderson*, 86 F.3d at 934–35. On remand, the district court gave the required *Klingele* notice and opportunity to oppose defendants' motion. Anderson provided no new evidence, and the district court again granted summary judgment in favor of defendants. Anderson timely appeals.

## I. First Amendment Claim

**[1]** Anderson contends that the district court erred in granting summary judgment on his claim that the Nevada prison regulations violate his First Amendment right to the free exercise of religion.[1] We review its decision de novo. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996). The Supreme Court has held that prison regulations "alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987).[2] Prison regulations are thus upheld if they are "reasonably related to legitimate penological interests." *Id.; Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). Factors relevant in determining the reasonableness of a restriction include (1) the connection between the regulation and a legitimate, neutral government purpose, (2) the existence of alternative means of exercising the right, (3) the impact accommodation of the right would have on guards, other inmates, and prison resources, and (4) the absence of ready alternatives to the regulation. *Id.* at 89–91, 107 S.Ct. at 2261–62.

Nevada contends that the ban on inmate-led religious activity is reasonably related to legitimate security concerns. Its concern is that an inmate may have an incentive to inflame or exert influence over other inmates and may advocate radical or inflammatory positions in an attempt to recruit members for his congregation. An additional danger is that inmate-led religious activity may be merely a cover for gang or other unlawful activity. Although this court has not previously considered this issue, several other circuits have relied on these justifications to uphold similar restrictions. *See Cooper v. Tard*, 855 F.2d 125, 129 (3rd Cir.1988) (sustaining regulation prohibiting unsupervised inmate religious activity); *Hadi v. Horn*, 830 F.2d 779, 784–85 (7th Cir.1987) (finding that cancellation of religious services when outside chaplain not available was reasonable); *Tisdale v. Dobbs*, 807 F.2d 734, 738–39 (8th Cir.1986) (upholding regulation requiring re-

1. In his opening brief, Anderson also appears to challenge the prison's decision to move various religious activities to other locations and its practice of preventing religious materials from coming into the prison. These claims were not raised below, and we do not consider them here.

2. In light of the Supreme Court's decision in *City of Boerne v. Flores*, — U.S. ——, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), which held unconstitutional the Religious Freedom Restoration Act, we need not address Anderson's claim that the regulation substantially burdens his religious freedom in violation of the Act.

ligious services to be led by "outside free-world sponsor").

We agree with the approach of these courts and hold that Nevada's prohibition on inmate-led religious services does not violate the First Amendment. Requiring an outside minister to lead religious activity among inmates undoubtedly contributes to prison security. It helps ensure that inmate activity is supervised by responsible individuals and lessens the possibility that inmate religious groups will subvert prison authority. The rule does not foreclose Anderson from practicing his religion; in fact, he is welcome to assist the prison chaplain in leading religious activities. Thus, there are other ways for Anderson to exercise his rights. In light of the prison's security concerns, however, we do not see any ready alternatives to the regulation. As a result, we conclude that Nevada's regulation is reasonable and constitutional under *Turner* and *O'Lone.*

### II. Effect of Prison Litigation Reform Act

[2] The Prison Litigation Reform Act of 1996 establishes special rules governing proceedings by prisoners in forma pauperis. In particular, it provides, "the court shall dismiss the case at any time if the court determines that ... (B) the action or appeal ... fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). In *Marks v. Solcum,* 98 F.3d 494 (9th Cir.1996), we held that this provision "applies to all appeals pending on or after April 26, 1996, regardless of when the complaint or notice of appeal was filed." *Id.* at 496.[3] Because Anderson is proceeding in forma pauperis and has failed to state a claim for relief under *Turner* and *O'Lone,* we are required to dismiss the appeal. *See id.*

The appeal is DISMISSED.

**Troy A. ASHMUS, of himself as an individual and on behalf of himself and all others similarly situated, Plaintiff–Appellee,**

**v.**

**Arthur CALDERON, Warden; Teena Farmon, Warden of the Central California Women's Facility; James H. Gomez, Director, California Department of Corrections; Daniel E. Lungren, Attorney General, Defendants–Appellants.**

**No. 96–16141.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 18, 1996.

Submission Vacated June 11, 1997.

Resubmitted Aug. 11, 1997.

Decided Aug. 18, 1997.

After his conviction and sentence were affirmed on direct appeal, 54 Cal.3d 932, 2 Cal.Rptr.2d 112, 820 P.2d 214, condemned California prisoner challenged application of expedited review provisions that Antiterrorism and Effective Death Penalty Act (AEDPA) to federal habeas petition as filed by California prisoners condemned to death. The United States District Court for the

3. We do not believe that the Supreme Court's opinion in *Lindh v. Murphy,* — U.S. —, 117 S.Ct. 2059, 138 L.Ed.2d 481(1997) requires us to revisit this holding. Nothing in the language of the Act suggests that Congress intended this provision to apply only to cases filed after its effective date. Moreover, as *Marks* argued, section 1915(e)(2) does not impair prisoners' substantive rights; it merely prevents them from maintaining appeals that lack merit in any event. Unlike the rule in *Lindh,* it does not "change standards of proof and persuasion in a way favorable to a state." *Lindh,* — U.S. —, at —, 117 S.Ct. 2059, 2063. As a result, we conclude that *Marks'* analysis remains correct under *Lindh.*

In any event, although this case was originally brought in 1993, Anderson filed his notice of appeal on January 28, 1997, well after the effective date of the Act. As a result, we have no doubt that it governs our consideration of this appeal.