**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**WESLEY SPRATT**

v. **C.A. No. 04 - 112 S**

**A.T. WALL,** Director, Rhode Island Department of Corrections, and the **RHODE ISLAND DEPARTMENT OF CORRECTIONS,**

**Report and Recommendation**

Jacob Hagopian, Senior United States Magistrate Judge

Wesley Spratt ("Spratt" or "plaintiff"), *pro se*, an inmate legally incarcerated at the Rhode Island Department of Corrections ("RIDOC"), Cranston, Rhode Island, filed a complaint pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. Spratt named as defendants the RIDOC [1] and its director, A.T. Wall ("Wall" or "defendant").

Both Spratt and Wall filed motions for summary judgment. On January 13, 2005, I issued a Report and Recommendation, recommending that summary judgment be granted in Wall's favor, and against Spratt, on plaintiff's Section 1983 claims. I further recommended that Spratt's RLUIPA claim be stayed pending the resolution of Cutter v. Wilkinson, 349 F.3d 257 (6th Cir. 2004)(finding RLUIPA violated the First Amendment), cert. granted 125 S.Ct. 308 (2005). The District Court accepted my recommendations. On May 31, 2005, the Supreme Court issued a decision in Cutter, reversing the Sixth Circuit and finding that RLUIPA did not offend the First Amendment. See Cutter v. Wilkinson 125 S.Ct. 2113 (2005). Accordingly, plaintiff's RLUIPA claim is now ripe for consideration.

---

[1] The District Court dismissed RIDOC from this action on February 11, 2005.

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for report and recommendation. For the reasons that follow, I recommend plaintiff's motion for summary judgment be **DENIED** and defendant's motion for summary judgment be **GRANTED** on plaintiff's RLUIPA claim. I have determined that a hearing is not necessary.

**Undisputed Facts**

The following are the undisputed facts ascertained from the parties' submissions in this matter: [2]

In March 1996, a state court jury convicted Wesley Spratt of murder and related offenses. See State v. Spratt, 742 A.2d 1194, 1196 (R.I. 1999). The state court sentenced him to a term of imprisonment at the Rhode Island Department of Corrections, Adult Correctional Institutions ("ACI"). Id. At all times relevant in the complaint, plaintiff was and continues to be confined in the Maximum Security Unit ("maximum security") at the ACI.

While housed in maximum security, Spratt began to preach at and lead Christian religious services within that unit for other inmates under the supervision of the ACI's clergy and with the knowledge of officials at the Department of Corrections. Spratt preached at religious services on a weekly basis in the ACI's Chapel or in a dining room for at least seven years. Plaintiff indicates that preaching is his "calling" from God and a "gift" from God. Indeed, while incarcerated, Spratt received his "Credentials of Ministry" and his commitment to his faith has garnered praise from several ACI chaplains. No evidence has been presented which indicates that there have been any disciplinary problems during plaintiff's supervised preaching or any disciplinary problems resulting

[2] The Court has construed plaintiff's submissions liberally. Haines v. Kerner, 404 U.S. 519 (1972).

therefrom.

In October 2003, the administration changed within maximum security. With the new administration came a new restriction for Spratt. The new administration forbade Spratt to preach at or lead religious services. Defendant Wall rested this new restriction on the basis of maintaining institutional security. Much to plaintiff's dismay, plaintiff may only participate in religious services as any other inmate.

After pursuing the matter internally without a favorable result, plaintiff filed suit seeking relief. The Court has already ruled in the defendant's favor on plaintiff's Section 1983 claims. The only claim that remains is pursuant to the RLUIPA, 42 U.S.C. § 2000cc-1. Both parties have moved for summary judgment.

**Discussion**

**A. Summary Judgment Standard**

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). Summary judgment can only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Rule 56 has a distinctive set of steps. When requesting summary judgment, the moving party must "put the ball in play, averring 'an absence of evidence to support a nonmoving party's case.'" Garside, 895 F.2d at 48 (quoting Celotex v. Catrett, 477 U.S. 317, 325 (1986)). The nonmovant then must document some factual disagreement sufficient to deflect brevis disposition. Not every

discrepancy in the proof is enough to forestall summary judgment; the disagreement must relate to some issue of material fact. See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247-248 (1986).

On issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. See id. at 256-257. This evidence "cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve at an ensuing trial." Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989). Evidence that is merely colorable or is not significantly probative cannot deter summary judgment. Anderson, 477 U.S. at 256-257.

**B. RLUIPA**

The plaintiff has brought suit under the RLUIPA. The RLUIPA provides, in pertinent part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution...unless the government demonstrates that imposition of the burden on that person –
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.
>
> 42 U.S.C. § 2000cc-1(a).

The RLUIPA protects institutionalized persons who are dependent upon the government for permission and accommodation for religious exercise. See Cutter v. Wilkinson, 125 S.Ct. 2113 (2005). The RLUIPA creates a higher standard of review for free exercise claims than that applicable to constitutional free exercise claims. See Murphy v. Mo. Dept. of Corr., 372 F.3d 979, 986 (8th Cir. 2004). "Requiring a State to demonstrate a compelling interest and show that it has adopted the least restrictive means of achieving that interest is the most demanding test known to constitutional law." City of Boerne v. Flores, 521 U.S. 507, 545 (1997). Therefore the strict level of scrutiny of the RLUIPA affords inmates more protection against religious infringement by

correctional facilities' regulations than the rational basis analysis under the First Amendment. Cf. Id. with O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987).

Both parties have moved for summary judgment on plaintiff's RLUIPA claim, each contending that the other cannot sustain his burden of proof under the RLUIPA.[3] I shall discuss each parties' burden in turn.

**1. Plaintiff's Burden Under the RLUIPA**

Under the RLUIPA, plaintiff bears the initial burden to demonstrate that the prohibited activity is a religious exercise and that the defendant substantially burdened that exercise. See 42 U.S.C. § 2000cc-1. Defendant claims that the plaintiff cannot sustain his burden. I disagree.

**a. Religious Exercise**

In City of Boerne v. Flores, 521 U.S. 507 (1997), the Supreme Court declared the Religious Freedom Restoration Act ("RFRA"), see 42 U.S.C. § 2000bb, unconstitutional as applied to the states. In order to fall within the meaning of "religious exercise" under the RFRA, the religious exercise had to be a central tenet of the religion. See Weir v. Nix, 114 F.3d 817, 820 (8th Cir. 1997); Werner v. Cotter, 49 F.3d 1476, 1480 (10th Cir. 1995); Bryant v. Gomez, 46 F.3d 948, 949 (9th Cir. 1995). Congress responded to Flores and enacted the RLUIPA. Among the changes, Congress eliminated the "central tenet" requirement and broadly defined "religious exercise" to "include[] any exercise of religion whether or not compelled by, or central to, a system of religious belief." See 42 U.S.C. § 2000cc-5(7)(A). With such a broad definition, plaintiff's preaching easily qualifies as a

---

[3] The defendant concedes that RLUIPA applies here. See 42 U.S.C. § 2000cc-1(b)(providing that the RLUIPA applies to any program or activity that receives federal financial assistance); see also Cutter v. Wilkinson, 125 S.Ct. 2113, n. 4 (2005).

religious exercise within the meaning of RLUIPA.

**b. Substantial Burden**

Next, plaintiff must demonstrate that his religious exercise was substantially burdened. "Substantial burden" is not defined in the RLUIPA, see 42 U.S.C. § 2000cc-5, and the Court of Appeals for the First Circuit has yet to weigh in on the matter. Courts of Appeals addressing this issue have come to mixed results. See Adkins v. Kaspar, 393 F.3d 559, 568 (5th Cir. 2004)(a substantial burden "truly pressures the adherent to significantly modify his religious behavior and significantly violate his beliefs"); Civil Liberties For Urban Believers v. City of Chicago, 342 F.3d 752, 761 (7th Cir. 2003)(a substantial burden is one "that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise ... effectively impracticable" ); San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004)(a substantial burden imposes "a significantly great restriction or onus upon such exercise"); Midrash Sephardi, Inc.v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004)(a substantial burden is one that results from pressure that "forces adherents to forgo religious precepts or from pressure that mandates religious conduct").

When the words of a statute create ambiguity a court should consult legislative history to ascertain an appropriate statutory interpretation. See Ma. Fin. Serv., Inc. v. Sec. Investor Prot. Corp., 545 F.2d 754, 757 (1st Cir. 1976). "[The] court's duty in matters of statutory construction is to give effect to the intent of Congress." Flora v. United States, 357 U.S. 63, 65 (1958). The congressional intent behind the RLUIPA was not to create a new standard for "substantial burden." Rather, the RLUIPA's "substantial burden" should "be interpreted by reference to Supreme Court jurisprudence." See 146 Cong. Rec. S7776 (July 27, 2000).

The Supreme Court has found that a substantial burden occurs when a state "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," Thomas v. Review Bd. of Instant Employment Sec. Div., 450 U.S. 707, 718 (1981), or when a person is required to "choose between following the precepts of her religious and forfeiting the benefits, on the one hand, and abandoning the precepts of her religion ... on the other." Sherbert v. Verner, 374 U.S. 398, 404 (1963). However, "incidental effects of government programs, which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs" do not fall within these parameters. Lyng v. Northwest Indian Cemetery Protective Association, 485 U.S. 439, 450-51 (1988).

Mindful of Supreme Court precedent, decisions from other circuits, RLUIPA's legislative history, the plain wording of the statute, and considering Congress' intent to afford a wider array of religious practices the benefit of greater protection, see 42 U.S.C. 2000cc-5(7), I find that a "substantial burden" on religious exercise occurs, in the context of RLUIPA, when an individual is forced to significantly modify his or her religious behavior and violate his or her religious beliefs. See Thomas, 450 U.S. at 718. Restriction or regulations that impose mere inconveniences or have an incidental effect upon an individual's religious exercise will not be deemed substantial. Lyng, 485 U.S. at 450-51.

Here, the undisputed facts demonstrate that plaintiff has preached to other inmates at the ACI for at least seven years, with the apparent blessings of RIDOC personnel. There is also no dispute that the defendant's restriction forced plaintiff to forgo this religious exercise, significantly modifying his religious behavior. Moreover, plaintiff alleges, and the defendant does not dispute, that plaintiff views his ability to preach as a "gift" from God and that preaching is his "calling" from

God. Thus, the undisputed facts demonstrate that defendant's restriction forces the plaintiff to violate his beliefs by not answering his "calling."

Since plaintiff is no longer permitted to follow his "calling" by preaching under the supervision of the ACI's chaplain, as he has done for the past seven years while incarcerated, defendant's restriction imposed a significant limitation on the plaintiff's religious exercise, violating his religious beliefs. Accordingly, I find that the plaintiff has demonstrated a "substantial burden" on his "religious exercise" within the meaning of RLUIPA.

**2. Defendant's Burden Under the RLUIPA.**

Since plaintiff has sustained his burden under the RLUIPA, the focus now shifts to the defendant. In order to repel plaintiff's claim, defendant must set forth evidence to demonstrate that the restriction on plaintiff's supervised preaching is in furtherance of a compelling interest and that the restriction is of the least restrictive means. See 42 U.S.C. § 2000cc-1(a)(1) and (2).

**a. Compelling Interest**

Defendant contends, and it is undisputed that he based the restriction on maintaining institutional security. See Affidavit of Jake Gadsen ("Gadsen Affidavit"), Assistant Director for Institutional Operations at the Rhode Island Department of Corrections, filed November 11, 2005, at ¶ 3 (the reason for the restriction is because inmate preachers "threaten[] security"). It is also undisputed that the prison administration's authority is compromised when inmates are given positions of authority or perceived authority, such as an inmate who is allowed to preach. See Gadsen Affidavit at ¶¶ 3, 4, and 5. Indeed, the defendant asserts that individuals or groups who wielded authority, or perceived authority, were a contributing factor to unrest and violence at the

prison during the 1970's.[4] See Defendant's Objection to Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment at 5.

The RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety." Cutter, 125 S.Ct. 2113 (2005). A correctional institution's "security is a compelling interest and deference is due to institutional official's expertise." Id. It is plainly evident here that allowing the plaintiff to be in a position of authority, or perceived authority, creates a security concern. Thus, prohibiting Spratt from preaching to other inmates furthers Wall's compelling interest of maintaining institutional security.

**b. Least Restrictive Means**

Next, the defendant must demonstrate that the restriction is of the least restrictive means. See 42 U.S.C. § 2000cc-1(a)(2). In other words, the defendant must demonstrate that the complete prohibition of the plaintiff's supervised preaching was the least restrictive available to satisfy his security interest.

Gadsen indicates in his affidavit that inmate preachers compromise security at the prison, even one preaching under RIDOC's supervision. See Gadsen Affidavit at ¶ 4. Gadsen's affidavit demonstrates that an inmate in a position of authority, or perceived authority, threatens security, concluding that an outright ban on inmate preaching is the only manner to ensure that security is not compromised. Id. at ¶ 4 and ¶ 5. Gadsen indicates, and, it is undisputed that there are no means to accommodate the plaintiff's preaching while, at the same time, maintaining institutional security. Id. I accept this, and defer to the prison officials' judgment.

---

[4] Although there is no evidence that there has been any incidents of violence or mischief during the seven years that plaintiff has been preaching, prison officials do not have to wait for misdeeds to occur before acting to prevent such misdeeds. Prison officials may act preemptively.

Although the plaintiff has preached under the supervision of ACI chaplains and with the knowledge of RIDOC officials for the past seven years,[5] it is undisputed that the defendant's interest in maintaining institutional security could not be achieved by a narrower restriction that burdens the plaintiff to a lesser degree. There are no least restrictive means available to accomplish Wall's compelling interest of maintaining institutional security, while at the same time, permitting the plaintiff to preach to other inmates.

Under RLUIPA, any substantial burden imposed upon an inmate's religious exercise cannot stand unless that burden is of the least restrictive necessary to further a compelling governmental interest. See 42 U.S.C. § 2000cc-1(a); Murphy, 372 F.3d at 989. Mindful of the defendant's primary obligation and responsibility to preserve good order and maintain discipline, custody and control of those who have been legally convicted of criminal offenses, I find that the restriction placed on Spratt is necessary to further Wall's compelling interest in maintaining safety and security at the prison. The defendant has legitimately and reasonably concluded that plaintiff's preaching cannot continue.

**Conclusion**

Accordingly, for the reasons set forth above, I recommend that plaintiff's motion for summary judgment be denied and the defendant's motion for summary judgment be granted on plaintiff's RLUIPA claim. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten days of its receipt. Fed R. Civ. P. 72(b); Local Rule 32. Failure to filed timely, specific objections to this report constitutes waiver of both the right to

---

[5] Several ACI chaplains support and have praised plaintiff's preaching abilities. See Plaintiff's Motion for Summary Judgment, Exhibit 1.

review by the district court and the right to appeal the district court's decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986) (per curiam); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

Jacob Hagopian
Senior United States Magistrate Judge
November 21 , 2005