**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **WESLEY SPRATT,** **Plaintiff** | ) | |
| **vs.** | ) | **C.A. No.: 04-112S** |
| **A.T. WALL, et al.,** **Defendants.** | ) | |

**PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANT'S SUPPLEMENTAL MEMORANDUM BASED ON NEW INFORMATION**

## I. Introduction

In November 2005, Magistrate Judge Hagopian issued a Report & Recommendation in favor of granting Defendant, Rhode Island Department of Corrections' ("Defendant"), motion for summary judgment in this case brought pursuant to the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq. The Plaintiff, Wesley Spratt ("Spratt"), subsequently appealed. Both parties submitted additional memoranda to the Court, and oral arguments were held on April 6, 2006. At that point, this Court took the matter under advisement and informed the parties that a decision would be forthcoming.

From the time that Spratt was incarcerated, up until the time of oral argument, he had not been subject to any significant discipline at the ACI.. Despite that, the Department still argued that Plaintiff's involvement in religious services prompted security concerns which could not be alleviated by any less restrictive means than a total ban. Now, months after the briefs have been filed, weeks after the oral arguments have been heard, and years after the decision to stop Spratt from

reading and expounding upon the scriptures, the Department argues that a recent disciplinary incident validates its security concerns. This argument cannot be seriously entertained. For the following reasons, Spratt argues that evidence of this incident cannot have any impact on whether any less restrictive means exists to accommodate his religious interest.

## II. Argument

***The Merits of the Underlying Allegations***

Despite what the Department has submitted, Spratt disputes that he ever stood on a dining room table and encouraged any group disagreement or encouraged anyone to discontinue working. See Spratt Affidavit (forthcoming). In fact, the "offender's report," submitted by the Department, does not even say that Spratt stood on a table. It is the Department's interpretation or characterization of the facts, that has resulted in the classification of the incident as "engaging in or encouraging a group demonstration and/or activities." There is no dispute that Spratt did point out to the correctional officer that during his job as dining room packer,[1] inmates have been allowed to wear coats. Also, there is no dispute that he removed his coat. There is no evidence in the report that he raised his voice, stood on a table, asked others to join in a protest, or partook in or encouraged any other potentially violent activity. There is no evidence that he was in a position of actual or perceived authority when he asked the inmates this question. Because of the inconsistencies between the report and the Department's memorandum, this incident is more likely retaliation - especially considering that Spratt received a thirty-day segregation sentence for the incident. Thus, if the Court intends to rely upon this information, Spratt should be given a full and fair opportunity to conduct

[1]Dining room packers sit at tables and pack salt, pepper, and napkins into a bag which is sealed and then ready for inmate use.

discovery with respect to the incident in order to both refute the allegations to establish that the security concerns are not justified and to determine if there was a retaliatory motive or connection.

***Impact of Allegations on Summary Judgment***

Even if everything the Department contends is true, which Spratt does not concede, the question is what impact does this incident have on Plaintiff's RLUIPA claim and the motions for summary judgment before the Court. Spratt suggests there is none because, if anything, the Department's allegations would only serve to buttress its "compelling interest" argument, and would have no impact on whether a least restrictive means exists to accommodate Spratt.

The key inquiry in the RLUIPA analysis here is whether there is any less restrictive means available so that Spratt can read and expound upon the scriptures during preacher-led religious services. See Murphy v. Mo. Dep't of Corrections, 372 F.3d 979, 989 (8th Cir. 2004). Significantly, the Court must examine the rationale offered by the prison at the time of the decision not to accommodate Plaintiff and not "**post-hoc** rationalizations [which] will not suffice to meet the act's requirements." Id. at 988-89 (citing Hamilton v. Schriro, 74 F.3d 1545, 1554 (8th Cir. 1996)) As has already been demonstrated, the prison's original rationale, blanket and non-specific security concerns, was generated not at the time of the decision, but only after Spratt sued under RLUIPA. This "new" information is simply another one of those post-hoc rationalizations.

Even more significant is the fact that this alleged incident has no connection to Plaintiff's "preaching." Spratt was not engaged in a religious exercise and this incident did not take place in the chapel. Accordingly, what probative value does it have for what actually would happen during a religious service? The Court is already well aware that Spratt read and expounded upon the scriptures for seven years without incident. This incident simply did not arise because of an

accommodation of a religious request. See Murphy, 372 F.3d at 989 ("[t]he threat of racial violence is of course a valid security concern, but to satisfy RLUIPA's higher standard of review, prison authorities must provide some basis for their concern that racial violence will result from any accommodation of [the prisoner's] request."). In addition, this incident is the type of conduct that probably happens on a daily basis and probably is not, in other situations, considered "encouraging a group demonstration." There is no support for the argument that just because an inmate is disciplined, no accommodation under RLUIPA is required.

As was presented in the Plaintiff's prior submissions, and raised by the Court itself during oral argument, even if the Department had legitimate security concerns - and even if those concerns are heightened by this alleged dining room incident - the analysis remains the same - is there any way to address those concerns and accommodate the Plaintiff. As the Court recognized, the problem in this case is that the Department has responded that no accommodation need be made, no matter what factual scenario is presented. For example, the Department stated during oral argument that even if Spratt were only allowed to "preach" for a limited period of time, thus decreasing the time that the alleged risk existed, no such accommodation would be made. According to the Department, no less restrictive means existed other than a total ban. This type of ban, without consideration of the individual facts and circumstances is the exact conduct prohibited by RLUIPA. See Gonzalez v. O Centro Espirita Beneficente Uniao Do Vegetal, 546 U.S. __, 126 S.Ct. 1211, 163 L.Ed.2d 1017 1032-33 (2006); see also Sample v. Lappin, 2006 WL 833130 (D.D.C. 2006) (denying Defendant's motion for summary judgment regarding whether outright ban on wine consumption was least restrictive means); Farrow v. Stanley, 2005 WL 2671541 (D.N.H. 2005) (denying Defendant's motion for summary judgment regarding whether total ban of access to sweat lodge was least

restrictive means). This alleged incident had nothing to do with the reason why the prison refused to accommodate Spratt for the past three years. Thus, it should be disregarded by the Court.

**III. Conclusion**

Based upon the foregoing, Plaintiff respectfully requests that this Court refuse to consider the Department's recent "new" information. The Plaintiff requests that the Court vacate summary judgement in favor of the DOC, and instead, enter summary judgment in Plaintiff's favor.

Plaintiff,
By his attorney,

Carly Beauvais Iafrate, #6343
Rhode Island Affiliate,
American Civil Liberties Union
170 Westminster St., Suite 601
Providence, RI 02903
(401) 421-0966
(401) 351-4802 (fax)

**CERTIFICATION**

I hereby certify that a true copy of the within document (without forthcoming affidavit) to Patricia A. Coyne-Fague, Rhode Island Department of Corrections, 40 Howard Avenue, Cranston, RI 02920 on the 22nd day of May 2006.